Good morning, your honors. May it please the court, Krista Hart for Mr. Avery. In this case, there is no procedural default, and I've got four different reasons for why there's no procedural default. First, under subject matters of jurisdiction. In this case, the court... Well, you do concede that your client failed to raise the claims on direct review, correct? Yes. Okay, so you're trying to come up with a, as I understand it, a way to get around that fact. We're talking either cause and prejudice, or we're talking actual innocence, or I guess you're going to talk about jurisdiction, but there's no question these claims were not raised on direct review. That's correct. That's correct, because at the time, there was no remedy for Mr. Avery on direct review. It wasn't until the 2010 case of Skilling where that remedy became available to him. So, and in 2010, Skilling told us that the conduct which Mr. Avery admitted in the plea, and which was outlined in the elements of the offense, is no longer a crime. Well, except that the facts before the court at the time to which he admitted are different from Skilling, in that Skilling's breach of the honest services doctrine dealt with fiduciary obligations or obligations to correctly report the financial health of the company. Your client did far more than just breach fiduciary duties. I mean, he basically helped himself to a portion of the race of the trust and converted it to his own use, including titling property in his name that belonged to the trust and paying off personal mortgages. That is the theft of money and property that the Supreme Court said is a core mail and wire fraud case in Skilling. So how can we conclude on the basis of this record that he can show cause and prejudice and that he's actually innocent of the crime of wire fraud? Well, first, that he did not steal the money from the Maysmith Trust. The money was used as collateral for a margin loan. So the money was put up, but it was never lost. It was never used. It never transferred to Mr. Avery's hands. Well, $49 million is gone, correct? But for other reasons. So in order to – But he got more than $3 million worth of personal property, did he not? You have to go back to look at the timing of how this all happened. Well, let's figure out what went to him. This would be a very different case if all we were talking about was buying assets that were titled in the trust, say all these trainer aircraft and their rocket pods and whatever else they were going to do in the Philippines. But he did far more than that. I mean, he basically bought himself boats and cars and houses and all sorts of things that, as near as I can tell, had absolutely nothing to do with administering the trust and everything to do with lining his own pocket. So Mr. Avery initiated a majority of his companies in early 2005. If you look at the pre-sentence report, so in January. It wasn't until later in that year, about six months later. So he has these businesses that are ongoing that are making a profit. Then he secures this margin loan to enhance, he creates the security aviation, and it's to enhance the businesses that he has. What does that have to do with paying off the loans on personal residence? Because he has income from these other businesses to pay off the loans. There's nothing in the record that says that he took the money directly from the Mae Smith Trust and paid off the personal loans. And aside from that, first of all, I mean, he has this margin loan, and he's making payments on the margin loan. So there is no intent to defraud the Mae Smith Trust out of anything, because he gets the loans. And if you look at the pre-sentence report, there are at least, I think, eight different payments that he makes from July of 2005 until December of 2005, where he is repaying on that margin loan. So you've got the Mae Smith Trust funds are being held as collateral. He borrows the money, and he is paying back the money. He's actually – so there is no – I thought some of those loans actually went into covering operating expenses of the business. The loan – That you're saying he then generated profits out of to repay the margin on the loan. That's correct. And so – Because the – I mean, he's laundering money is what he's doing. No, I mean, so the trust – He's laundering the proceeds. He's not using the trust assets. He's laundering the proceeds of wire fraud through all these entities that he also owns or controls. The trust assets were never transferred to Mr. Avery. They were just held as collateral. They never left the Mae Smith Trust. So they're in the Mae Smith Trust. They're just put up as collateral for a loan. So he gets a loan to develop a business. Now, as his business is progressing, he's getting income. He's taking some of that money. He's paying back the Mae Smith Trust. He's also taking some of that money and buying items. So – I'm still trying to understand what the legitimate interest was of the trust, trying to look at it from the standpoint of the beneficiary and an objective trustee who was otherwise carrying out his or her duties to see to it that the race is not abused for improper purposes. Well, that's where the honest services charge comes in, isn't it? Exactly. In other words, he misused his position in that sense, but he only pleaded to the honest services. Correct. And maybe that's the reason the government is willing to accept the plea, only to the honest services fraud, because the background you just gave is not as strong as it could be in terms of proving beyond a reasonable doubt that there was money wire fraud. That's correct. And under a – Well, I guess I'm having a little trouble. I don't know that that's all he pled to. I looked at the information, the allegations. Oh, you've got to look at the plea agreement. Correct. Well, I looked at the plea agreement, and the plea agreement on page 3 of this particular says that they're agreeing to the allegations of the information, that they're true. In the guilty plea on page 28 of the plea colloquy, he says, I plead guilty to the allegations of the information. Then I read the information. There's nothing in the information that says it's only as to honest services. Actually, I think if you – a careful read of the information does limit it to honest services. And the reason being – Frankly, I guess I would like to have you then explain to me in the information where – I'll have to get to it quickly here. But it doesn't seem to me that the information is to honest services at all. Honest services is one part of the information. Because the elements of wire fraud, plain wire fraud, are not included in the information. There is no evidence that Mr. Avery deceived, tricked, lied, made false representations to anyone in order to obtain this money. This was done with the consent of all three trustees, which is very above board. The problem is – above board? I mean, it looked to me like the other trustees could easily have been indicted as well. And it seems like everybody had their hand in this pot. Possibly could have been indicted for honest services fraud, but not wire fraud. But I guess the problem is that the people who should have been looking over his shoulder and passing upon the bona fides of these investments were, in essence, complicit in the activities of Mr. Avery. So there was nobody watching the chicken coop here while the fox had his day. And that might go to a fiduciary duty. They didn't fulfill their fiduciary duty. But that doesn't mean they committed wire fraud, because you need the false representation. You need a specific intent to defraud in order to find the plain wire fraud. And that's what's missing from the indictment, the information. That's where I go back to the questions I asked you at first, because this is more than a skilling honest services violation. This guy actually received proceeds. He got kickbacks in the form of free rides on executive jets, ostensibly for the business of the trust. But I'm having a hard time seeing how that was in furtherance of the trust activity. Well, that's a kickback. That goes to skilling, and that says that that's not illegal. There wasn't any evidence of kickbacks. No, but that's what you just said, Your Honor. There wasn't any evidence in skilling of that. It was essentially filing false financial reports with the Securities and Exchange Commission and propping up the reports on how viable Enron was that artificially inflated the public stock price. And they vacated the honest services conviction in skilling. And he was then convicted of mail fraud on remand. Correct, because there was other evidence, not just that evidence. But the evidence is here that wasn't in skilling. I guess that's the problem I'm having in determining. I agree with you that skilling controls as to the theory with regard to honest services. But as I think Judge Smith was pointing out, he pled to more than just honest services fraud based on the allegations and the information in the plea agreement. If you look at the plea agreement, the elements listed in the plea agreement are very, very explicit. And the government very explicitly limited the offense to honest services wire fraud. I think that's unequivocal if you look at the elements. So irrespective of what they charged in the information. Well, we'll ask the government when they get us to speak, but I'd be surprised if the government contends he pleaded to more than honest services. That's the whole gist of their answering brief, is that he pled to plain wire fraud. Well, let's ask Mr. French. I'll give you some time on rebuttal. Thank you. Thank you. May it please the Court, Kyle French for the United States. I want to initially start out with this procedural aspect confusion, just to clear that up. And I think what's occurring here is Avery is confusing procedural bar with procedural default. So there's no question that Avery has procedurally defaulted. He did not raise his claims in a district court, and he did not file a direct appeal, more than a year less within which he didn't file a 2255. So it's clear under the law that he has procedurally defaulted. So then the question is, is he completely barred from bringing any of these claims? And he is not procedurally barred. Why? Well, it's DOJ's position that, obviously, the skilling. Did you say he's not? He is not procedurally barred. He is procedurally defaulted. And he's not procedurally barred because skilling wasn't decided until more than a year after he'd been convicted. So the Department of Justice looks at this situation and says he should be allowed to bring his claims forward. He should not be barred just because skilling was decided more than a year after his conviction. And not only that, the Department of Justice also believes that it should be applied retroactively. That's another issue that's come up with procedural bar. So it's our position, no procedural bar here, but procedural default. So because he's procedurally defaulted, that brings us to the second question, which this court has certified, which is he's only entitled to relief if he can show either actual innocence or cause and prejudice. So if we look at the actual innocence aspects, there's a couple of things to keep in mind. Now, Bosley and the United States Supreme Court said in terms of actual innocence, it means that Avery must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. And it means factual innocence, not mere legal innocence. No, but innocence of the charge to which he pleaded. Absolutely. And in this case, Mr. Avery pleaded to both traditional pecuniary wire fraud. Okay, show that to me. Certainly. And let us start first with identifying the elements of wire fraud. I did file a Rule 28. Well, let's look at the plea agreement. Certainly. We'll start with the plea agreement. Looking at the plea agreement, defense counsel focuses on the listing of the elements. In terms of the listing of the elements, the question is, as the elements are listed in the plea agreement, does that satisfy what needs to be shown for traditional pecuniary wire fraud? And do the facts support that? And the answer is yes in both accounts. So, for example, if you were to look at Exeter Record page 24, which is page 8 of the plea agreement, at the top, it says, first, the defendant made a scheme or planned to defraud the Maysmith Trust of its right to honest services. If your honor, would you take that sentence and put a period after trust and eliminate, per skilling, the honest services here convictions no longer stand, cross out of its right of his honest services. Okay, it then reads, first, the defendant made up a scheme and planned to defraud the Maysmith Trust, and so on. If your honor were to look at the elements and strip out the references to honest services, if your honor were to look at the facts and strip out references to honest services, you still have a pecuniary wire fraud charge standing. Now, this is a negotiated plea agreement. If Mr. Avery did not want to plea to traditional wire fraud. Where did you get that? Just a minute. Doesn't the traditional wire fraud include the intent to defraud? It's not in here, is it? Well, you'd have to take the second sentence and have it be that the defendant acted with the intent to deprive the Maysmith's Trust. No, it didn't say intent to defraud. Intent to deprive the Maysmith of honest services, that's what it says. Right, and if you were to take out the honest services clause, you still have an intent of deprivation. Deprivation of what? It's not an element of wire fraud to say a deprivation of yachts, a deprivation of funds. An intent to deprive is not an element of anything. It's got an intent to deprive of something. In other words, that has to have an object. And it doesn't say, you know, intent to deprive of nothing. I mean, if you cross out honest services there, that element has no meaning. You still have a scheme or plan to defraud in the first element. I mean, you're reading an awful lot into something that's not there, aren't you? Well, and Your Honor, if you're looking at what he pled to, you're looking at not only the elements list. Rule 11 requires that the nature of the charge be identified to the defendant. And the elements list is one aspect of that. If Your Honor were to look at specifically how the scheme to defraud is defined within the information, and what's in the information is actually copied and pasted over. So it's basically the same. It says that in this work. Where are you? I'm sorry, Your Honor. I'm at Exit Record 7, which is paragraph 15. Fifteen. Of the information. Okay. It is also stated verbatim in the basis of facts to which Mr. Avery agreed upon. The scheme to defraud, this is what it's described as. It's stated as, quote, devised or intended to devise a scheme and artifice to defraud the May Smith Trust and May Wong Smith of their money, property, and intangible right of honest services and trust. If you were to go down to the next section, where it says what is the, quote, purpose of this. Okay, let me stop you there. You see, the information is very clear about an intent, right, to deprive the Smith Trust of several things, right? In that exactly the same language appears in the factual basis of the plea, Your Honor. No, because it's not in the plea. That's my point. Because this paragraph of the information says intent to deprive Smith and the Smith Trust of their money, property, and honest services. That's not what the plea agreement says. It says to deprive of honest services. It strikes out property and money. So it's not exactly what the plea agreement says, is it? Well, the plea agreement has honest services. It doesn't use money and property in the plea agreement, does it? Because you don't. It doesn't use it or not? Not in the elements. All right. So it says something different than what the information says. There must be a reason why it's different. The reason why it's different is because there's an additional burden of showing in terms of honest services that is not there in traditional wire fraud. And that's why it's not there. And there's an additional element in wire fraud, traditional, that's not there in honest services. The honest service phrase is added to the elements because it's an honest service case. That's the only reason why they're there. It's not because it's not an exclusive either or. A case that is an honest services case, you can't say it can never be a traditional case. Oh, no, not if you have the proof. And we do have the proof, Your Honor. No, but the question is, I mean, what did the defendant plead to? What does the plea agreement mean? You're saying leaving out these words in an attempt to deprive the trust of money and property, striking out the words money and property doesn't mean a thing. That's what you're saying. Your Honor is saying that we would, that the elements require us to state money and property. And that is not true in the Ninth Circuit. Well, why did you put in the information? Because it's not required. Just for fun? No, to show pecuniary gain, to satisfy traditional wire fraud elements. That's right. You didn't show that in the plea agreement. Yes, we did. The plea agreement actually shows those facts. It doesn't say money and property. You're saying the listing of the elements themselves as stated. In the plea agreement on page 3, as I tried to point out once before, page 3 of 21, it says, I agree to enter a plea of guilty to counts 1 through 5 of the information, which charged me with wire fraud in violation, and then it cites, and counts 6 through 15. If I go back to counts 1 through 5, there's where you have what you have read to us. In the guilty plea on page 28 of the plea colloquy, it absolutely suggests that this guy agrees, on page 28 of the plea colloquy, to plead guilty to all of the counts of the information. Absolutely, Your Honor. The information itself is clearly a pecuniary wire fraud-based information. The honest services is the vehicle through which he used to do what he did here, to get this money, get property titled in his name. This is an individual who was making $600,000 a year as a trustee. He was a lawyer, and in this situation, he took advantage of his position to buy a yacht, to pay off mortgages, to purchase property, to buy SUVs. The listing of property is incorporated and identified in the information, and broken out in the money laundering count. For example, in the money laundering count, he specifically told, or he specifically identified to him that, for example, transaction 6, $630,000 went to pay off for SUVs and other things. 7 talks about paying a mortgage on an Eagle residence. 8 is to Class A motorhome. So as Your Honor looks at the information, it's replete with the basis of facts and satisfaction of the elements this court requires to show wire fraud. For this court to decide for Avery would essentially alter what this court has said, as I indicated in Rule 28, Left Letter. I just went back 80 days as to what this court has said about the elements of wire fraud. I didn't go back any further, but this court has identified that what's stated here is certainly satisfactory of traditional wire fraud, as stated in the information and as stated in the plea agreement. The only issue is the plea agreement uses the phrase, honest services. The plea agreement doesn't, in the elements section. I mean, the district court went through, I'm looking at pages, I guess it's 20, let's see, what am I looking at? I'm looking at the entry of the plea, starting, I think, around page 24, where he asked the government to set forth in great detail all of the evidence that it would show at trial. And then Mr. Avery adopts that as an accurate statement at page 28. And one thing here, too, Your Honor, is Judge Beislein, the lower court judge who presided over these proceedings, the opinion here is not a curse, a few paragraphs. This is a 50-page opinion he wrote in denying the 2255. He's the one who took Avery's plea. He's the one who heard the counts identified to him. He's the one who knows what Avery specifically agreed to. And in his mind, this is an extremely fair case. Not only that, is he not actually innocent. He can't show cause and prejudice. Now, he can't show cause, arguably, because he could have made his skilling argument like other people were at that time. But if you look primarily toward the prejudice aspect, there simply is no prejudice in this case. No, but this is what the judge said at the plea agreement. This is on page 45 of the Plano C.E.R., at the bottom he says, and these are the things the government would have to prove in order to convict you of a crime. And he goes through exactly the elements in the plea agreement. First, you made a scheme or plan to defraud the Maysmith's Trust of its right to your honest services. That's all you have to prove. Second, they'd have to prove that you acted with the intent to deprive the Trust of honest services. And third, you caused a wiring and so forth. There's nothing in there about deprivation of money or property. And what Judge Beistlein says, this is what the government has to prove beyond the reasonable doubt in order to prove your guilt. That's the limit of his plea taking. Isn't that correct? Yes, Your Honor. Show me somewhere else where he requires a showing of money or property fraud. Your Honor is absolutely right. That's what he says is required, and that's what the elements say, and they do say honest services. So the question is, were those elements also subsumed traditional wire fraud, and were that supported by the facts? You're saying skilling doesn't mean anything. Or that a plea agreement that's limited to honest services doesn't mean anything. Skilling means something major in this case. You strip out his honest service conviction. That can't go forward. That's all he pleaded. That's my point. The only thing he pleaded to was honest services. But the elements encompass traditional wire fraud. They do not need to list yacht. But he didn't plead to it. Let me see if I can help here. Is there, based on the factual basis for the plea set forth at pages 23 through 28, is your argument that there is a sufficient showing of traditional mail and wire fraud based on his adoption of those facts, that he can't show cause and prejudice or actual innocence of mail and wire fraud to warrant relief here? Because if we remand it, he's bound by those admissions. And he's still guilty of traditional mail and wire fraud, to which he pled guilty. Yes, Your Honor. And as Judge Beislein points out, he, in my phrasing, got a heck of a deal here. If he goes back, his guideline sentencing, the top range would be three times what he was sentenced to. The government moved for a variance downward. This case was essentially, the negotiated plea was done even before the information was filed in this case. It would be very different on remand. And as Judge Beislein emphasizes, there's simply no prejudice. And if you look at the maximum sentence under what you strip out from stealing versus what you strip out or what's left, it's the same maximum sentence. And not just the factual basis, Your Honor, but also the information that he agreed with supports it. So it's the record as a whole in terms of what he did and what he, and you can look toward the PSR, according to Beislein also, in terms of identifying what he did. Okay. Let's, I think, give your opposing counsel the last word. Thank you. As to the elements of plain wire fraud, what's missing in the information and missing in the factual basis in the plea agreement is a material misrepresentation. It's not missing from the information. It's clearly missing from the recitation of the elements in the plea agreement and in the plea colloquy. I don't think, I think Judge Shishim is absolutely right on that. But the question is, looking at all of the admissions that he made in conjunction with the plea, how in the face of those admissions can he show either cause and prejudice or actual innocence? Because there's a difference between admitting what's contained in an information or a factual basis for a plea and admitting to the substantive that you have committed a substantive crime. And in this case, it's all honest services. No. In essence, what you're arguing is that there was an omission in the recitation of the elements, but we still have to conduct under, what is it, Cotton versus the United States, we still have to look at the question of prejudice in order to determine whether habeas relief is warranted. As far as? And I'm correct. Cotton was the case that said the indictment failed to charge the quantity and therefore the elements were not adequately set forth in the indictment. And that went to subject matter jurisdiction. Right. But here, the problem is. And harmless error, because the Supreme Court told us under Rule 52, if that's the case, we do have subject matter jurisdiction and we apply harmless error analysis. But the problem is there is no, he did not plead guilty to plain wire fraud, and you can't just say, well, let's just eliminate this, because you're going back and you're changing the contract. But I guess what you're asking for here, if we send this case back and the indictment or information is amended, as the government has a right to do under the terms of the plea agreement, without regard to the passage of time, then they're going to charge a traditional mail and wire fraud count and they're going to prove up all the admissions that he made at the plea, and he's going to be convicted again, only this time he's going to get more time. So what are you asking for? Here's the problem with that argument, Your Honor, is an element, there's two elements that are missing. One is the material misrepresentation. The other is a specific intent to defraud. And there's a loan. Mr. Avery made numerous payments back on that loan. The district court, in taking the plea, even says, I find that you intended to pay back that loan and you are making an effort. Okay. I understand that. Maybe it's a strong case, but, and also wonder about whether or not, you know, admissions made in plea negotiations are admissible at trial. I don't believe they are. So he may not be as bad off as some people think. But still, I go back to Mr. French's seeming, I think, accurate characterization that your client got a hell of a deal. And going to Mr., I mean, to Judge Tallman's question, well, how is he going to do better if he goes back? Because they don't have any evidence of specific intent to defraud. They don't have any evidence of a material misrepresentation to anyone here. And that's why. And those are, despite what was written in the 28J letter, which I can go through those cases and explain to the court how they are not applicable here. For example, the government says that a material misrepresentation is not an element of wire fraud. Well, Green, a case that they rely on and cite in their 28J letter, if they read the next sentence in that case, it says the scheme to defraud must include an affirmative material misrepresentation. Ginian, another case that they cited in their 28J letter, there is no fraudulent scheme without specific intent. The specific intent is to defraud, which is deceit, trickery, cheating, and that's to permanently keep that property. If he's paying that money back. That's why I started out asking you all those questions about the items of personal property because if it were just the acquisition of the trainer jets, I would agree with you. But when he starts helping himself to a yacht and to his Coast Guard patrol boat. But you're presuming that that money came out of the May Smith Trust to buy a yacht. And that's not what happened. The fraud in the connection, as I understand the theory of the prosecution, the fraud is in posting the assets of the trust as collateral to secure the margin loan, not for the benefit of any legitimate trust business, but for his own personal gain. And that's the misrepresentation. If you look at the table, which is on pages 19 to about 24 of the presentence report, which enumerates all of the payments, a vast majority of them were to business-related expenses. And so while Mr. Avery has that business, he has other businesses. He has income of his own. And so there is no indication that the money that went to buy a yacht was the money from the May Smith Trust. It was his own money, money that he earned. I mean, if we were only talking about one specific item of personal property, I guess that argument would resonate more strongly. But I don't understand why it doesn't. Because there is no evidence that that money came from the May Smith Trust to buy those items. Because of the laundry list of all of the things that he acquired for his own personal use. But so if a person owns businesses and makes a lot of money, it's wrong to acquire property? We're talking about $52 million worth of expenditures. No, we're not talking about $52 million worth of personal expenditures. The money that went to personal expenditures is significantly less. But it's still in the millions, is it not? Probably. I haven't added it up. I think we understand your position. The case is submitted and we will now take our break. We'll be in recess for about 10 minutes. All rise. This court is now in recess for 10 minutes.
judges: Tashima, Tallman, Smith